**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

AMANDA BROWN,                                             Case No:

                   Plaintiff,                    **COMPLAINT**

      -against-                              **Jury Trial  Demanded**

COLUMBIA UNIVERSITY IRVING MEDICAL CENTER
and COLUMBIA UNIVERSITY,

               Defendants.
-------------------------------------------------------------------X

    Plaintiff, AMANDA BROWN ("Plaintiff" or "Ms. Brown"), by her attorneys, The Seltzer Law Group P.C., submits this Complaint against Defendants COLUMBIA UNIVERSITY IRVING MEDICAL CENTER and COLUMBIA UNIVERSITY as follows:

## INTRODUCTION

1. Plaintiff commences this action pursuant to the American with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, as amended ("ADA"), Article 15 of the New York State Executive Law § 296 *et seq*., as amended (the "New York State Human Rights Law" or "NYSHRL"), and New York City Administrative Code § 8-101 *et seq.*, as amended  (the "New York City Human Rights Law" or "NYCHRL") for disability discrimination, retaliation, and for failure to accommodate Plaintiff's disability.  Plaintiff seeks appropriate monetary relief, as well as appropriate equitable relief, to redress the wrongdoing complained of herein.

## STATEMENT PURUANT TO LOCAL RULE 9

2.    For purposes of complying with Local Rule 9, Plaintiff states that she has no corporate parent, subsidiary or affiliate, and that there are no other interested parties.

## JURISDICTION AND VENUE

3.    Plaintiff invokes this Court's jurisdiction pursuant to pursuant to 42 U.S.C. § 12101 *et seq.*, and 28 U.S.C. § 1331.

4.    This District has supplemental jurisdiction over Plaintiff's NYCHRL and NYSHRL claims pursuant to 28 U.S.C. § 1367(a).

5.    Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because the conduct giving rise to this action occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.    On March 8, 2021, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC), which was assigned Charge No. 520-2021-02086.

7.    In said Charge of Discrimination, Plaintiff alleged that Defendants discriminated against her based upon her disability, failed to accommodate her disability, and that Defendants retaliated against her for engaging in protected activity by requesting an accommodation for her disability.

8.    On May 24, 2021, the EEOC issued to Plaintiff a "Dismissal and Notice of Rights" to Plaintiff with reference to her Charge of Discrimination.

9.    Plaintiff commenced this action within the time prescribed by the Dismissal and Notice of Rights.

2

**PARTIES**

10.  Plaintiff is a natural person residing in the State of New Jersey.

11.  Plaintiff holds a Bachelor of Science Degree in Nursing issued by the Columbia University School of Nursing.

12.  Plaintiff holds a Master of Science Degree in Nursing issued by the Columbia University School of Nursing.

13.  At all times relevant hereto, Plaintiff has been a Registered Nurse licensed with the State of New York.

14.  At all times relevant hereto, Plaintiff has been a Nurse Practitioner licensed with the State of New York.

15.  Plaintiff is also Registered Nurse and Nurse Practitioner licensed with the State of New Jersey.

16.  Plaintiff is a certified Psychiatric-Mental Health Nurse Practitioner through the American Nurses Credentialing Center.

17.  Defendant Columbia University Irving Medical Center ("CUIMC") is an academic medical center located at 630 West 168th Street, new York, New York 10032.

18.  CUIMC holds itself out to the general public as a clinical, research and educational enterprise.

19.  CUIMC holds itself out to the general public as a provider of patient care as well as medical and health sciences education.

20.  CUIMC offers general and specialized medical, dental and nursing services.

21.  CUIMC, at all relevant times, has had more than 1,800 physicians, surgeons, dentists and nurses in locations throughout the New York City metropolitan area.

22. CUIMC holds itself out to the general public as a provider of international leadership in basic, preclinical and clinical research.

23. CUIMC holds itself out to the general public as home to the largest medical research enterprise in New York City and New York State.

24. CUIMC holds itself out to the general public as one of the largest faculty medical practices in the Northeast United States.

25. Columbia University is a private Ivy League research university consisting of numerous campuses and locations primarily in northern Manhattan, New York City.

26. Columbia University's principal administrative offices are located at 535 West 116th Street, New York, New York 10027.

27. At all times relevant hereto, an affiliation agreement existed between Columbia University and New York-Presbyterian Hospital ("Presbyterian").

28. Pursuant to the affiliation agreement, doctors, nurses and other medical personnel employed by Columbia University possessed privileges to engage in the practice of medicine at Presbyterian.

**PLAINTIFF'S EMPLOYMENT**

29. On September 5, 2018 Columbia University and CUIMC (collectively "Columbia") hired Plaintiff to the position of Associate in the Department of Psychiatry (hereinafter "Psychiatry Associate").

30. Columbia initially appointed Plaintiff to a term as Psychiatry appointment that expired on June 30, 2019.

4

31.  Columbia subsequently reappointed Plaintiff to an additional term as Psychiatry Associate that began on July 1, 2019 and concluded on June 30, 2020.

32.  As a Psychiatry Associate employed by Columbia, Plaintiff was a full-time Psychiatric Nurse Practitioner.

33.  As part of her employment with Columbia, Plaintiff was appointed as a medical staff member of Presbyterian's Department of Psychiatry and possessed non-admitting privileges.

34.  Upon her hiring, Plaintiff was assigned to an inpatient psychiatric unit of Presbyterian's Allen Hospital known as 3 River East (hereinafter "Allen 3 River East") located at 5141 Broadway, New York, New York 10034.

35.  Allen 3 River East provides psychiatric treatment to individuals afflicted with psychotic and affective disorders.

36.  Plaintiff's duties and responsibilities as a Psychiatry Associate at Allen 3 River East consisted of performing psychiatric assessments of patients, creating treatment plans and rendering treatment to patients involving administration of medication as well as treatment that did not involve administration of medication.

37.   On a daily basis, the first hour of Plaintiff's shift consisted of meeting with other personnel assigned to Allen 3 River East to discuss patients.

38.  Thereafter, Plaintiff attended to patients and made notes in their charts.

39.  Plaintiff also participated in meetings with patients' family members and social workers.

40.  Plaintiff also communicated with attending personnel from other departments to discuss treatment of patients medically.

41.  Plaintiff additionally communicated with other facilities regarding patients.

42.  On a weekly basis, Plaintiff documented a treatment plan for each of her assigned patients.

43.    Plaintiff also performed patient admissions at a maximum frequency of once weekly.

44.    As part of her employment, Columbia additionally appointed Plaintiff to the position of Officer of Instruction.

45.    As an Officer of Instruction, Plaintiff principally communicated with students and participated in case conferences with students and other staff.

## PLAINTIFF'S PROTECTED DISABILITY

46.    In early September 2019, Plaintiff experienced pain, numbness and tingling in her bilateral upper extremities.

47.    Plaintiff previously was experiencing pain in her back, chest and ribcage areas, for which she was undergoing medical treatment.

48.    Upon experiencing the symptoms in her arms, Plaintiff sought medical treatment for those symptoms.

49.    Plaintiff was ultimately diagnosed with thoracic outlet syndrome.

50.    Thoracic outlet syndrome is a condition whereby symptoms are produced from the compression of the nerves, arteries or veins in the passageway from the lower neck to the armpit.

51.    The symptoms of thoracic outlet syndrome typically include neck pain, shoulder pain and numbness and/or tingling in the arms and/or hands.

52.    As a result of having thoracic outlet syndrome, Plaintiff experienced significant impairment and limitations in performing the following activities: driving, household chores and carrying groceries.

53.    As a result of having thoracic outlet syndrome, Plaintiff experienced significant impairment and limitation in participating in yoga, one of her hobbies.

54. As a result of having thoracic outlet syndrome, Plaintiff experienced significant impairment and limitation in engaging in downward pressing motions with her arms extended.

55. As a result of having thoracic outlet syndrome, Plaintiff experienced significant impairment and limitation in engaging in physical movements that required activation of the lower armpit area.

56. Plaintiff experienced symptoms of thoracic outlet syndrome as a result of typing, writing, pressing and clicking to a certain degree and extent.

## PLAINTIFF'S MEDICAL LEAVE AND REQUEST FOR A REASONABLE ACCOMMODATION

57. Columbia placed Plaintiff on approved medical leave in connection with her protected disability.

58. Plaintiff's medical leave commenced on or about September 13, 2019.

59. Over the subsequent months, Plaintiff's condition improved such that she was able to perform the essential functions of her job at Columbia with reasonable accommodation.

60. In March 2020, Plaintiff initiated communication with Columbia requesting a dialogue to explore a  reasonable accommodation so that Plaintiff could return to work.

61. In February 2020, due to the impending expiration of Plaintiff's paid leave of absence period allotted under Columbia's employment policies, Plaintiff initiated the process of applying for long term disability benefits with Columbia's disability insurance carrier.

62. In her submissions to Columbia's disability carrier, Plaintiff indicated that she would no longer be disabled if Columbia provided Plaintiff with accommodations for her disability that would allow Plaintiff to return to work.

63. In her submissions to Columbia's disability carrier, Plaintiff indicated that she was capable of returning to work if Columbia provided Plaintiff with accommodations for her disability.

64. On March 6, 2020, Plaintiff contacted her supervisor for the purpose of discussing her return to work.

65. After Plaintiff's supervisor failed to respond to her communication, Plaintiff again contacted her supervisor on March 11, 2020 for the purpose of discussing her return to work.

66. On March 11, 2020, Plaintiff's supervisor instructed her to discuss her to communicate with Human Resources.

67. On March 11, 2020, Plaintiff informed her supervisor that she has been in contact with Columbia's Leave Management Office ("Leave Management") and that Leave Management instructed Plaintiff to discuss her continued employment with her supervisor.

68. Plaintiff therefore asked other appropriate administrative and/or supervisory individuals in Columbia's Psychiatry Department if she could discuss her continued employment with them.

69. Plaintiff did not receive a response to her subsequent communication.

70. On March 19, 2020, Plaintiff informed a representative of Leave Management, Kenesha Giocastro, that Plaintiff desired to discuss her return to work and explore whether Columbia could accommodate Plaintiff's disability.

71. Plaintiff also asked Ms. Giocastro if Columbia intended to transition her to long-term disability status even though her attempts to discuss returning to work with accommodations went unanswered by Columbia's Psychiatry Department.

72. On March 26, 2020, Ms. Giocastro, who had previously provided Plaintiff with a reasonable accommodation request form, instructed Plaintiff to communicate with a Human Resources representative associated with the Columbia Psychiatry Department to discuss Plaintiff's questions about completing the accommodation request form.

73. Plaintiff unsuccessfully attempted to communicate with the recommended individual.

74. In view of the absence of any guidance from Columbia, on or about April 21, 2020, Plaintiff communicated by telephone with the Department Administrator and Chief Operating Officer of the Columbia Psychiatry Department, Amy Friedman.

75. During this communication, Plaintiff informed Ms. Friedman about her desire to return to work with accommodations.

76. Plaintiff also informed Ms. Friedman of her pending application for long term disability benefits.

77. Ms. Friedman stated that she would follow up on the issues discussed with Ms. Giocastro and would communicate with Plaintiff again the following week.

78. Instead, on April 21, 2020 following her telephone call with Plaintiff, Ms. Friedman sent Plaintiff an email stating that Ms. Friedman spoke with Ms. Giocastro and that Ms. Giocastro could best advise Plaintiff going forward.

79. On May 1, 2020, Plaintiff and Ms. Giocastro communicated by telephone.

80. During this telephone conversation, Ms. Giocastro provided Plaintiff with guidance as to completing the reasonable accommodation request form.

81. Ms. Giocastro also asked Plaintiff to participate in a telephone conversation with her and Hana Bloch, Columbia's Senior Manager of Workplace Accommodations.

82. Plaintiff was also advised that she should apply for long term disability benefits thirty (30) days prior to the anticipated need even if Plaintiff was uncertain if she would proceed or continue with the claim.

83. On May 6, 2020, Plaintiff transmitted to Ms. Giocastro the completed reasonable accommodation request form as well as correspondence dated April 20, 2020 authored by Plaintiff's orthopedist, Morgan A. Busko, MD.

84. Dr. Busko's correspondence indicated that Plaintiff could return to work as of March 13, 2020 but would need accommodations.

85. Dr. Busko's correspondence referred the reader to the reasonable accommodation request form.

86. In the accommodation request form, Plaintiff proposed the following accommodations for her disability: a touch-screen device with voice-to-text documentation capabilities; working from home via telehealth to help with difficulty commuting to work at that time; lightened documentation requirements, extended time to complete documentation for a limited caseload to allow more time to document on each case; and, if the foregoing proposals were unsuccessful, possible reduction in hours.

87. Plaintiff was not seeking that all of the accommodation proposals that she propounded be fully implemented.

88. Plaintiff was requesting that some of her proposals be implemented to a reasonable degree, or at least explored, so that she could resume working productively.

89. The principal function of Plaintiff's position for which she could needed accommodation was the documentation and typing requirement.

90. The typing and documentation requirements were capable of being readily satisfied by furnishing voice-to-text and touch screen software programs and technology.

91. Such programs and technology were available to, and/or easily obtainable by, Columbia.

92. Making such programs and technology available to Plaintiff for use did not impose an undue financial or operational burden upon Columbia.

## COLUMBIA'S DISCRIMINATORY AND RETALIATORY ACTIONS

93. At no time did Columbia substantively address Plaintiff's proposed accommodations.

94. At no time did Columbia propose any alternative measures in response to the accommodations proposed by Plaintiff.

95. At no time did Columbia engage in a dialogue with Plaintiff addressing the reasonableness of her proposed accommodations.

96. On May 8, 2020, Plaintiff participated in a telephone conference with Ms. Giocastro and Ms. Bloch.

97. During the telephone conference, Plaintiff stated that she preferred to attempt to return work with accommodations rather than a long term disability placement.

98. Ms. Bloch informed Plaintiff that Columbia would not participate in a dialogue about Plaintiff returning to work with accommodations unless Plaintiff clarified whether she was pursuing her application for long term disability.

99. Ms. Bloch informed Plaintiff that Columbia would not entertain Plaintiff's request to return to work with accommodations so long as Plaintiff was pursuing a claim for long term disability benefits.

100. Ms. Bloch informed Plaintiff that Columbia would not entertain Plaintiff's request that Columbia reasonable accommodate her disability so long as Plaintiff was pursuing a claim for long term disability benefits.

101. Ms. Bloch informed Plaintiff that Columbia would not entertain Plaintiff's request to return to work with accommodations unless Plaintiff advised her that she was not disabled and that she was able to return to work.

102. On multiple occasions during the telephone conference, Ms. Bloch stated firmly to Plaintiff that, if she was still experiencing medical issues then long term disability was the appropriate choice for Plaintiff.

103. During the telephone conference, Ms. Bloch stated to Plaintiff that there was no guarantee that Columbia would accept her accommodations and that, if Plaintiff was attempting to return to work, Ms. Bloch would need to speak to all of the physicians that treated Plaintiff during her medical leave in addition to Dr. Busko.

104. During the telephone conference, Ms. Bloch stated that if Plaintiff did not have an active claim for long term disability benefits, then she would be considered absent from work without documentation.

105. Ms. Bloch's statements to Plaintiff were intended to discourage Plaintiff from pursuing her request for a reasonable accommodation to return to work.

106. May 8, 2020, the date of the telephone conference, was a Friday.

107. During the telephone conference, Ms. Bloch told Plaintiff that she needed to know if Plaintiff was applying for long term disability benefits by the following Monday.

108. On May 11, 2020, Plaintiff informed Ms. Bloch and Ms. Giocastro that she was pursuing her application for long term disability benefits.

109. Had Plaintiff declined to continue with her long term disability application, she risked termination of unemployment on the basis of having an undocumented status.

110. Plaintiff's long term disability application specifically stated that Plaintiff would be able to return to work if she received an accommodation.

111. On May 11, 2020, Ms. Bloch informed Plaintiff that Columbia was not processing Plaintiff's request for an accommodation for her disability because Plaintiff was applying for long term disability benefits.

112. Columbia compelled Plaintiff to choose between applying for long term disability benefits or requesting an accommodation for her disability on a mutually exclusive basis.

113. On May 13, 2020, only five (5) days after Plaintiff's conversation with Ms. Bloch and Ms. Giocastro about Plaintiff's requests for an accommodation for her disability, Ms. Friedman transmitted a letter informing Plaintiff that her faculty appointment was not going to be renewed and that Plaintiff's employment with Columbia would terminate on December 31, 2020 (hereinafter "Columbia termination letter").

114. The Columbia termination letter was dated April 22, 2020, which was one day after Plaintiff informed Ms. Friedman that she was seeking an accommodation for her disability in order to return to work and that she had also submitted an application for long term disability benefits.

115. The Columbia termination letter did not provide a reason for the termination of Plaintiff's appointment.

**FIRST CAUSE OF ACTION**
*(Failure to Accommodate Under the ADA)*

116. Plaintiff hereby repeats and realleges each and every allegation contained within paragraphs "1" through "115" as though fully set forth at length herein.

117. Defendants are employers subject to the ADA and all amendments thereto.

118.  Plaintiff suffered from thoracic outlet syndrome and, as such, had a protected disability under the ADA and all amendments thereto.

119.  Plaintiff was able to perform the essential functions of her job with a reasonable accommodation.

120.  Plaintiff made a request for a reasonable accommodation on account of her disability.

121.  Defendants refused to engage in a dialogue with Plaintiff about her request for a reasonable accommodation.

122.  Defendants never suggested any alternatives to the accommodations proposed by Plaintiff.

123.  Defendants informed Plaintiff that they would not participate in a dialogue about Plaintiff returning to work with accommodations unless Plaintiff clarified whether she was pursuing her application for long term disability.

124.  Defendants informed Plaintiff that they would not entertain Plaintiff's request to return to work with accommodations so long as Plaintiff was pursuing a claim for long term disability benefits.

125.  Defendants informed Plaintiff that they would not entertain Plaintiff's request that Columbia reasonable accommodate her disability so long as Plaintiff was pursuing a claim for long term disability benefits.

126.  Defendants informed Plaintiff that they would not entertain Plaintiff's request to return to work with accommodations unless Plaintiff advised them that she was not disabled and that she was able to return to work.

127.  On May 11, 2020, Defendants informed Plaintiff that they were not processing Plaintiff's request for an accommodation for her disability because Plaintiff was applying for long term disability benefits.

128. Defendants compelled Plaintiff to choose between applying for long term disability benefits or requesting an accommodation for her disability on a mutually exclusive basis.

129. By their actions, Defendants and their agents have failed to reasonably accommodate Plaintiff, which constitutes an unlawful employment practice on account of Plaintiff's disabilities in violation of the ADA, including all amendments thereto.

130. This unlawful conduct occurred through the termination of Plaintiff's employment on May 13, 2021.

131. Defendants and their agents cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can their actions be otherwise justified under the ADA, including all amendments thereto.

132. Any alleged non-discriminatory reason is nothing more than a pretext so that Defendants and their agents could attempt to mask their deliberate actions.

133. By reason of Defendants' actions and inactions, whereby Defendants and their agents have engaged in unlawful discriminatory practices, Plaintiff has been severely damaged.

134. Plaintiff has suffered loss of economic benefits, salary and employment prospects and has additionally suffered compensatory damages recoverable by law.

135. Because of the actions complained of, Plaintiff has become entitled to appropriate injunctive and monetary relief, including reinstatement, an expungement of all discriminatory motivated records, compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon, and an award of attorneys' fees, expert fees, costs and disbursements.

## SECOND CAUSE OF ACTION
*(Failure to Accommodate Under the NYSHRL*
*And NYCHRL)*

136. Plaintiff hereby repeats and realleges each and every allegation contained within paragraphs "1" through "135" as though fully set forth at length herein.

137. Plaintiff suffered from thoracic outlet syndrome and, as such, had a protected disability under the NYCHRL and NYSHRL and all amendments thereto.

138. Plaintiff was able to perform the essential functions of her job with a reasonable accommodation.

139. Plaintiff made a request for a reasonable accommodation on account of her disability.

140. Defendants refused to engage in a dialogue with Plaintiff about her request for a reasonable accommodation.

141. Defendants never suggested any alternatives to the accommodations proposed by Plaintiff.

142.  Defendants informed Plaintiff that they would not participate in a dialogue about Plaintiff returning to work with accommodations unless Plaintiff clarified whether she was pursuing her application for long term disability.

143. Defendants informed Plaintiff that they would not entertain Plaintiff's request to return to work with accommodations so long as Plaintiff was pursuing a claim for long term disability benefits.

144. Defendants informed Plaintiff that they would not entertain Plaintiff's request that Columbia reasonable accommodate her disability so long as Plaintiff was pursuing a claim for long term disability benefits.

145. Defendants informed Plaintiff that they would not entertain Plaintiff's request to return to work with accommodations unless Plaintiff advised them that she was not disabled and that she was able to return to work.

146. On May 11, 2020, Defendants informed Plaintiff that they were not processing Plaintiff's request for an accommodation for her disability because Plaintiff was applying for long term disability benefits.

147. Defendants compelled Plaintiff to choose between applying for long term disability benefits or requesting an accommodation for her disability on a mutually exclusive basis.

148. By their actions, Defendants and their agents have failed to reasonably accommodate Plaintiff, which constitutes an unlawful employment practice on account of Plaintiff's disabilities in violation of the NYCHRL and NYSHRL, including all amendments thereto.

149. This unlawful conduct occurred through the termination of Plaintiff's employment on May 13, 2021.

150. Defendants and their agents cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can their actions be otherwise justified under the NYCHRL and NYSHRL, including all amendments thereto.

151. Any alleged non-discriminatory reason is nothing more than a pretext so that Defendants and their agents could attempt to mask their deliberate actions.

152. Pursuant to the NYCHRL, Defendants were obligated to engage in a cooperative dialogue with Plaintiff about her accommodation needs.

153. Defendants failed to engage in the required cooperative dialogue which, in and of itself, is a violation of the NYCHRL.

154. Defendants' discriminatory and retaliatory acts occurred and had an impact within New York City.

155. By reason of Defendants' actions and inactions, whereby Defendants and their agents have engaged in unlawful discriminatory practices, Plaintiff has been severely damaged.

156. Plaintiff has suffered loss of economic benefits, salary and employment prospects and has additionally suffered compensatory damages recoverable by law.

157. Because of the actions complained of, Plaintiff has become entitled to appropriate injunctive and monetary relief, including reinstatement, an expungement of all discriminatory motivated records, compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon, and an award of attorneys' fees, expert fees, costs and disbursements.

### THIRD CAUSE OF ACTION
*(Retaliation Under the ADA)*

158. Plaintiff hereby repeats and realleges each and every allegation contained within paragraphs "1" through "157" as though fully set forth at length herein.

159. The foregoing actions by Defendants and their agents violate the ADA, including all amendments thereto, in that Defendants and their agents retaliated against Plaintiff because she requested a reasonable accommodation for her disability.

160. Plaintiff made a request for a reasonable accommodation on account of her disability.

161. Plaintiff's request for a reasonable accommodation is a protected activity under the ADA.

162. Defendants terminated Plaintiff's employment on May 13, 2020, which was shortly after she requested that Defendants reasonably accommodate her disability.

163. Ms. Bloch's comments to Plaintiff during their May 8, 2020 telephone conference evince an animus toward Plaintiff for her accommodation request, as Ms. Bloch's comments during

the telephone conference were intended to discourage Plaintiff from pursuing her request for a reasonable accommodation so that she may return to work.

164. Defendants compelled Plaintiff to choose between her long term disability benefits application and her request for a workplace accommodation on a mutually exclusive basis which further evinces Defendants' animus toward Plaintiff and her protected activity.

165. Defendants would not have terminated Plaintiff's employment "but for" her protected activity.

166. Defendants retaliated against Plaintiff her in compensation, terms, conditions and privileges of employment by terminating her employment in violation of the ADA.

167. Defendants and their agents cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can their actions be otherwise justified under the ADA.

168. Any alleged non-discriminatory reason is nothing more than a pretext so that Defendants and their agents could attempt to mask their actions.

169. By reason of Defendants' actions and inactions, whereby Defendants and their agents have engaged in unlawful discriminatory practices, Plaintiff has been severely damaged.

170. Plaintiff has suffered loss of economic benefits, salary and employment prospects and has additionally suffered compensatory damages recoverable by law.

171. Because of the actions complained of, Plaintiff has become entitled to appropriate injunctive and monetary relief, including reinstatement, an expungement of all discriminatory motivated records, compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon, and an award of attorneys' fees, expert fees, costs and disbursements.

## FOURTH CAUSE OF ACTION
*(Disability Discrimination Under the ADA)*

172. Plaintiff hereby repeats and realleges each and every allegation contained within paragraphs "1" through "171" as though fully set forth at length herein.

173. The foregoing actions by Defendants and their agents violated the ADA in that Defendants and their agents discriminated against Plaintiff by terminating her employment because of her protected disability.

174. Plaintiff suffered from a disability protected under the ADA.

175. Defendants would not have terminated Plaintiff's employment "but for" her disability.

176. Defendants terminated a disabled employee who could perform the essential functions of her job but could not return to work because Defendants denied her request for a reasonable accommodation.

177. Defendants' failure to consider the possibility of a reasonable accommodation for Plaintiff's disability lead directly to the termination of Plaintiff's employment.

178. Since the termination of Plaintiff's employment directly resulted from Defendants' failure to reasonably accommodate Plaintiff's disability, Defendants terminated Plaintiff because of her disability.

179. Since the termination of Plaintiff's employment directly resulted from Defendants' failure to so much as consider the possibility of a reasonable accommodation for Plaintiff's disability, Defendants terminated Plaintiff because of her disability.

180. Defendants and their agents cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can their actions be otherwise justified under the ADA.

181. Any alleged non-discriminatory reason is nothing more than a pretext so that Defendants and their agents could attempt to mask their actions.

182. By reason of Defendants' actions and inactions, whereby Defendants and their agents have engaged in unlawful discriminatory practices, Plaintiff has been severely damaged.

183. Plaintiff has suffered loss of economic benefits, salary and employment prospects and has additionally suffered compensatory damages recoverable by law.

184. Because of the actions complained of, Plaintiff has become entitled to appropriate injunctive and monetary relief, including reinstatement, an expungement of all discriminatory motivated records, compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon, and an award of attorneys' fees, expert fees, costs and disbursements.

## FIFTH CAUSE OF ACTION
*(Disability Discrimination and Retaliation Under the New York State and the New York City Human Rights Law)*

185. Plaintiff hereby repeats and realleges each and every allegation contained within paragraphs "1" through "184" as though fully set forth at length herein.

186. The foregoing actions by Defendants and their agents violate the NYSHRL and NYCHRL. in that Defendants and their agents retaliated and discriminated against Plaintiff because of her protected disability and because plaintiff engaged in protected activity under the state and city anti-discrimination statutes.

187. Plaintiff suffered from a protected disability.

188. Plaintiff requested a reasonable accommodation for her disability.

189. Defendants terminated Plaintiff's employment on May 13, 2020, which was shortly after she requested that Defendants reasonably accommodate her disability.

190. Ms. Bloch's comments to Plaintiff during their May 8, 2020 telephone conference evince an animus toward Plaintiff for her accommodation request, as Ms. Bloch's comments during the telephone conference were intended to discourage Plaintiff from pursuing her request for a reasonable accommodation so that she may return to work.

191. Defendants compelled Plaintiff to choose between her long term disability benefits application and her request for a workplace accommodation on a mutually exclusive basis which further evinces Defendants' animus toward Plaintiff and her protected activity.

192. Defendants terminated a disabled employee who could perform the essential functions of her job but could not return to work because Defendants denied her request for a reasonable accommodation.

193. Defendants' failure to consider the possibility of a reasonable accommodation for Plaintiff's disability lead directly to the termination of Plaintiff's employment.

194. Since the termination of Plaintiff's employment directly resulted from Defendants' failure to reasonably accommodate Plaintiff's disability, Defendants terminated Plaintiff because of her disability.

195. Since the termination of Plaintiff's employment directly resulted from Defendants' failure to so much as consider the possibility of a reasonable accommodation for Plaintiff's disability, Defendants terminated Plaintiff because of her disability.

196. Based upon the foregoing, Plaintiff's disability and her protected activity were "motivating factors" for her termination in violation of the NYCHRL.

197. Based upon the foregoing, Defendants terminated Plaintiff's employment due to her disability and her protected activity in violation of the NYSHRL.

198. Defendants' discriminatory and retaliatory acts occurred and had an impact within New York City.

199. By their actions, Defendants and their agents treated Plaintiff differently from other employees on account of retaliation and reprisal and discriminated against her in compensation, terms, conditions and privileges of employment including, but not limited to, terminating Plaintiff's employment in violation of the NYCHRL and NYSHRL.

200. Defendants and their agents cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can their actions be otherwise justified under the NYCHRL and NYSHRL.

201. Any alleged non-discriminatory reason is nothing more than a pretext so that Defendants and their agents could attempt to mask their actions.

202. By reason of Defendants' actions and inactions, whereby Defendants and their agents have engaged in unlawful discriminatory practices, Plaintiff has been severely damaged.

203. Plaintiff has suffered loss of economic benefits, salary and employment prospects as well as compensatory damages recoverable by law.

204. Because of the actions complained of, Plaintiff has become entitled to appropriate injunctive and monetary relief, including reinstatement, an expungement of all discriminatory motivated records, compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon, and an award of attorneys' fees, expert fees, costs and disbursements.

## **JURY DEMAND**

205. Plaintiff herein demands a trial by jury of all issues in this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that he be awarded the following relief:

a. On the first cause of action, appropriate injunctive and monetary relief, including an expungement of all discriminatory motivated records; compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon;

b. On the second cause of action, appropriate injunctive and monetary relief, including an expungement of all discriminatory motivated records; compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon;

c. On the third cause of action, appropriate injunctive and monetary relief, including reinstatement; an expungement of all discriminatory motivated records; compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon;

d. On the fourth cause of action, appropriate injunctive and monetary relief, including reinstatement; an expungement of all discriminatory motivated records; compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon;

e. On the fifth cause of action, appropriate injunctive and monetary relief, including reinstatement; an expungement of all discriminatory motivated records; compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon;

f.  With respect to all causes of action, an award of attorney's fees, expert fees, costs and

disbursements; and

g.  Such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
August 22, 2021

Respectfully submitted,
THE SELTZER LAW GROUP P.C.

By:

Steven Seltzer
*Counsel for Plaintiff*
125 Maiden Lane
Suite 507
New York, New York 10038
(646) 863-1854